## JOSEPH SIMON, RESPONDENT, *v.* A. H. BROWN, AS STATE TREASURER, APPELLANT.

CENTENNIAL COMMISSION ACT.—*Under the Centennial Commission Act, approved October 24, 1872, it is the duty of the State Treasurer to set apart a fund from which to pay all warrants drawn in virtue thereof.*

IDEM.—*Warrants drawn in virtue of said act cannot be paid out of the funds provided by the Appropriation Act approved October 24, 1874.*

APPEAL from Marion County.

The facts are stated in the opinion of the Court.

*W. H. Effinger*, for Appellant.

*E. C. Bronaugh*, for Respondent.

By the Court, McARTHUR, J.:

The petition alleges that, on November 7, 1872, the Secretary of State drew a warrant on the State Treasurer in the following form:

"No. 393.　　CENTENNIAL COMMISSION SUBSTITUTE.　　$504.

" STATE OF OREGON, SECRETARY'S DEPARTMENT,
" SALEM, November 7, 1872.

"State Treasurer will pay, out of the General Fund, to the order of A. J. Dufur, the sum of five hundred and four dollars.

　　　(Signed)　　　　　　　"S. F. CHADWICK,
　　　　　　　　　　　　　　　　　　　" Secretary of State."

That on said date the same was presented for payment, and, for want of funds, was not paid, and the then Treasurer indorsed the same as follows:

" Presented and not paid for want of funds, November 7, 1872.
　　　(Signed)　　　　　　　"L. FLEISCHNER,
　　　　　　　　　　　　　　　　　　　" Treasurer."

That afterwards Dufur indorsed the same for value, and the plaintiff is now the owner and holder thereof.

That the Legislative Assembly, at its eighth biennial session, passed an act, entitled " An Act to provide for the ordinary expenses of the State government, and other general and specific appropriations," by which the said Legislative Assembly did appropriate the sum of $382,157.66, or so much thereof as might be necessary for the several objects in said act mentioned, for two years, commencing from September 14, 1874, to be paid out of any money in the treasury not otherwise appropriated, besides the sum of $7250 appropriated out of specific funds for specific purposes.

That by § 19 of said act it is provided that " no money shall be paid out under this act, except upon warrants drawn by the Secretary of State upon the State Treasurer; and all warrants drawn by the Secretary of State upon the Treasurer shall be paid by said Treasurer in the order in which they have been presented and indorsed, 'Presented and not paid for want of funds,' whether the same have been issued before or after the passing of this act."

That by § 20 of said act it is provided that, " owing to the

necessity of maintaining the public credit, this act shall take effect and be in force from and after its approval by the Governor," and that it was approved October 24, 1874.

That there are outstanding warrants drawn by said Secretary of State upon said Treasurer, and presented prior to November 7, 1872, and indorsed, "Presented and not paid for want of funds," to the amount and for the sum of twenty-two hundred dollars ($2200), and not to exceed that sum, and that there is now, in the General Fund, the sum of seven thousand or more dollars ($7000) in United States currency, which was received otherwise than for taxes, the requisite portion of which is applicable to and should be paid out by the Treasurer towards the satisfaction of the warrant aforesaid, with interest from the date of its indorsement by the Treasurer.

That on November 30, 1874, the plaintiff caused the warrant aforesaid to be duly presented and demand made for payment, which was refused by the present Treasurer, A. H. Brown, the defendant.

Then follows a prayer for a writ of mandamus commanding the Treasurer to reduce said currency in the General Fund to coin, and to pay said warrant, with the interest due thereon.

The defendant answers and says:

1. That he refuses to pay said warrant because the same belongs to, and is a part of, the deficient warrants drawn upon the State treasury for which no appropriation was made by the Legislative Assembly, and that he has no authority to pay any warrants presented to him unless authorized by act of said Assembly; and that said warrant is part of an indebtedness for which there has been no appropriation.

2. That the entire amount of outstanding warrants presented and indorsed "Not paid for want of funds," aggregates about $287,459.17, and that warrant No. 393 is of said number, and that none of said warrants are included in, or provided for in the appropriation bill passed October 24, 1874, and therefore he refused to pay the same.

3. That the warrants upon the various funds appropriated

by the said act, and accruing since September 14, 1874, aggregate at this time $78,957.51, and that the same are properly collectible from the Treasurer under and by virtue of said § 19; and that, if he should be required to pay the deficient warrants, he would not have any funds whatever wherewith to pay the current expenses of the State government, or any general or special expenses during the two years succeeding. Then follows a prayer for dismissal, etc.

A demurrer was interposed and sustained to the second and third portions of the answer.

Thereupon the plaintiff filed his reply, denying the first allegation in the answer, and averring that the Legislative Assembly did, by an act approved October 24, 1872, entitled "An Act to provide for paying the expenses of the Commissioner and Commissioner Substitute for the State of Oregon in attending the sittings of the United States Centennial Commission," appropriate the sum of four thousand dollars out of any money in the treasury not otherwise appropriated, to be used for the purposes expressed in the title of the act during the years 1872 and 1876, inclusive, upon which fund said warrant was drawn.

After trial the court below adjudged the writ properly issued and ordered that the said warrant be paid by the Treasurer. From the findings of the court it is apparent that the effect of the order was to cause payment to be made out of the seven thousand dollars of the general fund mentioned in the plaintiff's complaint. There is no question made here upon the ruling of the court below on the defendant's answer, and we pass that matter as unimportant.

It will be observed that the said answer nowhere puts in issue the following allegations of the complaint: 1. That there are outstanding warrants drawn by the Secretary of State upon the Treasurer, and presented prior to November 7, 1872, and indorsed, "Presented and not paid for want of funds," to the amount of twenty-two hundred dollars ($2200) and not to exceed that amount. 2. That there are now in the general fund of the treasury of the State the sum of seven thousand dollars ($7000) or more in currency of the United States, which was received by the Treasurer

· otherwise than for taxes, from which fund warrant No. 393 and accumulated interest is payable.

The first section of the act to provide for the payment of the Centennial Commission declares that "there shall be and is hereby set apart from any money in the State treasury not otherwise appropriated, the sum of four thousand dollars, to be used in defraying the expenses of the commissioner," etc.; and in the second section it is provided, after the bills of the commissioner are audited, the Secretary of State shall draw his warrant for the amounts audited, and that the Treasurer shall pay the same from the fund to be set apart in virtue of the first section; "Provided, that the aggregate amount paid in any one year shall not exceed one thousand dollars." (Laws 1872, 103.)

Thus it will be seen that the warrant in suit is to be paid out of a fund to be set apart by the Treasurer from any moneys not otherwise appropriated. Assuming that there are in the treasury the seven thousand and odd dollars belonging to the general fund as alleged in the complaint and not denied in the answer, and assuming further that there are warrants upon the general fund registered prior to this one, aggregating in amount twenty-two hundred dollars, it follows that there must be some forty-eight hundred dollars ($4800) in said general fund which it does not appear have been "otherwise appropriated," and from which the fund may be created out of which the law authorizes the centennial warrants to be paid.

We are of opinion that this warrant cannot legally be paid out of any of the funds provided for by the act of October 24, 1874. The very terms used in the first section of said act show that the Legislative Assembly specifically appropriated, for the objects enumerated in subsequent sections, certain definite sums of money to be paid out of any money not otherwise appropriated, during the two years succeeding September 14, 1874. Section 19 provides that "no money shall be paid out under this act except upon warrants drawn by the Secretary of State upon the State Treasurer. And all warrants drawn by the Secretary of State upon the treasury shall be paid by the said Treasurer in the

order in which they have been presented and indorsed, 'Pre-' sented and not paid for want of funds,' whether the same have been issued before or after the passage of this act."

It is contended that this section should be so construed as to authorize the State Treasurer to pay warrants which have been issued long prior to the second Monday in September, 1874, under the other acts of the Legislative Assembly and for other purposes than those mentioned in the other sections of that act. The question therefore is, can such an enlarged construction be given to § 19? If so, the entire character of the act is changed, and from an act providing for the ordinary expenses of the State government accruing during the two years succeeding the second Monday of September, 1874, and the other and general and specific appropriations enumerated therein, it will become an act to provide for certain extraordinary expenses incurred prior to that date, for which payment is neither generally nor specifically provided by the act. In construing this act it is the duty of the Court to ascertain, if possible, the intention of the Legislature, and in so doing the preamble and the general purview or body of the act are to be taken into consideration, and it is the duty of the Court to put a reasonable construction upon all its sections and clauses, in order to accomplish its obvious purposes and in order that all its provisions may, if possible, stand. Whenever the intention of the makers of a statute can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seems contrary to the letter of the statute. "A thing which is within the letter of a statute is not within the statute unless it be within the intention of the makers." (*Griswold* v. *National Insurance Co.*, 3 Cowen, 96.)

The obvious purpose of the act under consideration is to provide the necessary funds to defray the expenses of the State government for two years succeeding September 14, 1874, for it does not appear that it was passed in pursuance of Art. IX, § 6 of the State Constitution, but on the contrary it was passed in virtue of Art. IX, § 3 of the Constitution and of § 58, p. 760 of the General Laws.

If we look to the mere words of ¿ 19 there is an apparent inconsistency between it and other sections of the act, but when viewed in the light of the preamble and the other sections, that inconsistency disappears, and the said section may with much reason be taken to mean that no money shall be paid out under the act except upon warrants drawn by the Secretary of State upon the State Treasurer, and all warrants drawn by the Secretary upon the Treasurer in virtue of this act shall be paid by said Treasurer in the order in which they have been presented and indorsed, "Presented and not paid for want of funds," whether the same have been issued before or after the passage of the act. It must be borne in mind that this act was approved October 24, 1874. Also that ¿¿ 5 and 9 provide, among other things, for the payment of certain deficiencies in the Mute School fund and Penitentiary fund. Therefore the words, "whether the same have issued before the passage of this act," are intended to embrace such warrants as represent the deficiencies in the funds just mentioned. There is no reference whatever in the act to the Centennial Commission fund, and hence the act and no section thereof can properly be held to govern the payment of the warrants drawn thereon.

We therefore are of opinion that the warrant for the recovery of which this proceeding was instituted should be paid out of the fund first alluded to (the $7000), and the Treasurer should set apart the fund in accordance with the provisions of the act approved October 24, 1872, commonly called the Centennial Commission Act.

Judgment affirmed.